**M.O. EHREDT d/b/a Arctic Guide Air Taxi, Appellant and Cross-appellee,**

v.

**DeHAVILLAND AIRCRAFT COMPANY OF CANADA, LTD., Appellee and Cross-appellant.**

**Nos. S–199/204.**

Supreme Court of Alaska.

Aug. 30, 1985.

Rehearing Denied Sept. 30, 1985.

Bruce A. Bookman, James N. Leik, Perkins, Coie, Stone, Olsen & Williams, Anchorage, for appellant and cross-appellee.

Steven S. Tervooren, Frank A. Pfiffner, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from a judgment awarding damages to a pilot's widow against his employer and the aircraft manufacturer. The employer contends the trial court erred because (1) the trial court should have stayed the legal action pending a workers' compensation board decision on the claim, (2) the employer was protected by the exclusivity provision of the Workers' Compensation Act, (3) a coverage card prepared by the workers' compensation board was excluded from evidence, (4) the trial court applied the wrong measure of damages and (5) the verdict form allowed the jury to apportion negligence among all three parties rather than between the pilot and the defendants together. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 1978, a Twin Otter aircraft crashed in Barrow. M.O. Ehredt d/b/a Arctic Guide Air Taxi (Ehredt) owned the aircraft, which was piloted by Ehredt's employee, Patrick Charles Walters (Walters). Walters died in the crash. Alfred S. Atkins (Atkins), an employee of the North Slope Borough, was a passenger injured in the crash.[1] The plane was manufactured by DeHavilland Aircraft of Canada, Ltd. (DeHavilland).

Walters' widow (Walters) filed a workers' compensation claim which was controverted and never resolved by the Workers' Compensation Board (Board). Walters

sued Ehredt and DeHavilland in superior court, alleging negligence claims against both and a strict products liability claim against DeHavilland. Ehredt sought a stay of the civil action to allow the Board to process the pending workers' compensation claim, but the stay was denied. Ehredt and DeHavilland cross-claimed for contribution and indemnity. After Walters prevailed at trial, DeHavilland settled with Walters' successors and received an assignment of all their rights against Ehredt.[2]

In the civil action, Ehredt raised as an affirmative defense the exclusivity provision of the Workers' Compensation Act. The question before the superior court was whether Ehredt had complied with the act by providing coverage for Walters. The superior court refused to admit into evidence a coverage card prepared by the Board and granted a directed verdict for Walters that Ehredt was not entitled to the protection of the exclusivity provision.

Ehredt objected to the use of an alternative verdict form which allowed the jury to apportion negligence among Walters, Ehredt and DeHavilland rather than between Walters and the defendants together. Ehredt moved for a new trial based on the use of this verdict form, but the court denied the motion. Ehredt appeals.

## II. IMPACT OF THE PRIOR FILING OF A WORKERS' COMPENSATION CLAIM ON A LATER CIVIL ACTION

Ehredt argues that Walters' filing of a workers' compensation claim prior to his

---

1. Atkins, the passenger, also sought to recover for his injuries. He filed suit against Ehredt and Walters, but did not sue DeHavilland. The statute of limitations expired. Atkins' suit was consolidated with Walters'—the consolidated caption is In re Barrow Air Crash, October 13, 1978, 3AN–81–2321 Civil. Atkins then asserted a claim against DeHavilland for the first time. The trial court granted DeHavilland partial summary judgment based on the statute of limitations. We affirmed in *Atkins v. DeHavilland Aircraft Co.*, 699 P.2d 352 (Alaska 1985).

    At the time of the accident, Atkins was acting in the course and scope of his employment for the North Slope Borough. Providence Washington Insurance Company (Providence Washington) is the North Slope Borough's workers' compensation insurance carrier; it paid Atkins

compensation benefits and medical and rehabilitation treatment expenses.

In January 1983, Providence Washington filed a complaint in intervention against Ehredt and DeHavilland, seeking reimbursement and indemnity for amounts Providence Washington paid Atkins. The court entered judgment for DeHavilland based on the two-year tort statute of limitations. We affirmed in *Providence Washington Insurance Co. v. DeHavilland Aircraft Co.*, 699 P.2d 355 (Alaska 1985).

2. DeHavilland then successfully sought contribution from Ehredt, who appealed. We affirmed in *Ehredt v. DeHavilland Aircraft Co.*, —— P.2d ——, Op. No. 2974 (Alaska, August 30, 1985).

civil suit deprived the superior court of jurisdiction; therefore, its refusal to stay the action at law constitutes reversible error. DeHavilland argues that the trial court acted within its discretion.

■ The superior court and the Board have concurrent jurisdiction over claims by employees against their employers. *Alaska Workmen's Compensation Board v. Marsh*, 550 P.2d 805, 808 n. 8 (Alaska 1976). The question whether prior filing of a workers' compensation claim abrogates the concurrent jurisdiction of the superior court to hear the merits of the claim has not been decided in Alaska.

■ When a statute expressly creates a condition precedent to a civil action (e.g., exhaustion of administrative remedies), the complainant *must* pursue administrative remedies because the superior court has no jurisdiction. *State v. Zia, Inc.*, 556 P.2d 1257 (Alaska 1976) (action against the state on a contract). However, no similar statute limits the superior court's jurisdiction over workers' compensation claims.

The majority rule is that it is an abuse of discretion for a court to refuse to stay a civil action initiated after a workers' compensation action is filed. 2A A. Larson, The Law of Workmen's Compensation § 67.33, at 12–111 (1983); *Taylor v. Superior Court*, 47 Cal.2d 148, 301 P.2d 866, 867–68 (Cal.1956). However, the Supreme Court of Nevada recently held that an employee who had filed for and was receiving workers' compensation benefits was not precluded from litigating her common law action even though the Nevada Industry Commission had made no final disposition of her claim. *McGinnis v. Consolidated Casinos*, 650 P.2d 806 (Nev.1982). The policy goal is to coordinate the work of the courts and administrative agencies, therefore the question whether a court should defer depends on the unique facts of every

case. *See G & A Contractors v. Alaska Greenhouses*, 517 P.2d 1379, 1382–83 (Alaska 1974).

■ Mechanical application of the rule does not further its underlying policy given the facts of this controversy. The major issue before the court was the construction of an insurance contract, which is a question of law uniquely suited to judicial resolution. Furthermore, Ehredt waited until six weeks before the trial date, after much discovery had taken place, to request a stay. Moreover, no action had been taken in the administrative proceeding. We therefore conclude that the superior court did not abuse its discretion when it refused to grant the stay.

## III. ADMISSIBILITY OF THE COVERAGE CARD

An employer is required by law to file evidence of compliance with the Workers' Compensation Act with the Board. AS 23.-30.085. The Board maintains a coverage card file for this purpose. At trial, Ehredt offered into evidence a certified copy of a coverage card to prove that there was an official government determination that Ehredt was insured by an Industrial Indemnity Company of Alaska (IICA) workers' compensation policy at the time of Walters' death. Walters and DeHavilland objected on the grounds that the card was untrustworthy and that the danger of misleading the jury outweighed its probative value. Ehredt contends that DeHavilland's objections go to the weight rather than the admissibility of the evidence. The trial court initially admitted the card, but later reconsidered its ruling and excluded it.

■ Public records are not excluded by the hearsay rule provided there are no circumstances indicating that they are untrustworthy. Alaska R.Evid. 803(8).[3]

**3.** Alaska R.Evid. 803 provides in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .

(8) Public Records and Reports. (a) To the extent not otherwise provided in (b) of this subdivision, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities,

There is no dispute that the card is a public record within Evidence Rule 803(8)(a). The burden of proving untrustworthiness is on the party seeking to exclude the public record. *Kehm v. Procter & Gamble Manufacturing*, 724 F.2d 613, 618 (8th Cir. 1983). DeHavilland argues that the card is untrustworthy because it contains incorrect dates of coverage, it is unsigned and its source is unclear.

■ There was conflicting testimony by Board employees whether the lack of signature or unclear source renders the card untrustworthy. Furthermore, the dates of coverage on the card conflict with those in the insurance policy.[4] We conclude that the trial court was within its discretion in excluding the card under Evidence Rule 803(8)(b)(v).

■ Relevant evidence may also be excluded if its probative value is outweighed by the danger of prejudice, confusion or delay. Alaska R.Evid. 403.[5] The card had little probative value on the question of existence of coverage, since the Board does not examine insurance policies nor make any determination of coverage prior to filling out the cards. We conclude the court did not abuse its discretion in excluding the coverage card under Evidence Rule 403, because it found the jury might be misled into believing that the Board had determined that Ehredt was covered and because there would be needless presentation of cumulative evidence; since the insurance policy was before the court, there was no need to admit the coverage card.

## IV. EHREDT'S POLICY COVERAGE AND THE EXCLUSIVITY DEFENSE

Ehredt ran two sole proprietorships in Barrow: Arctic Cash & Carry, a grocery store, and Arctic Guide Air Taxi, an air taxi. In July 1978, he applied for workers' compensation insurance coverage on both businesses through a broker, Brady & Associates. Fred S. James & Co. took over as broker shortly thereafter and sent an IICA insurance policy to Ehredt. Although the policy referred only to the grocery store, Ehredt testified that he believed the IICA policy covered both the grocery store and the air taxi. On October 31, Ehredt submitted a report of occupational injury to the Board. IICA informed the Board that the claim would be controverted because there was no evidence that Walters' death was work-related.

Walters moved for a directed verdict on the question whether Ehredt had complied with the Act by securing coverage for Walters. The trial court granted the motion, thereby depriving Ehredt of the exclusivity defense.[6]

The Workers' Compensation Act requires employers to "secure payment of compensation" for their employees. AS 23.30.045, AS 23.30.075. If an employer complies by procuring a policy covering its employees, it is protected from an employee's action at law by the exclusive liability provision. However, if the employer fails to secure payment, the injured employee has the option to claim workers' compensation or to file an action at law. AS 23.30.055.

The Act conclusively presumes that workers' compensation policies cover all

---

or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

(b) The following are not within this exception to the hearsay rule: ... (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.

4. The insurance policy was admitted into evidence. It is discussed in detail in the next section.

5. Alaska R.Evid. 403 provides in pertinent part:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6. In its brief, DeHavilland cites several documents which were offered as exhibits but never admitted into evidence. As Ehredt correctly points out, these are not properly in evidence and we do not rely on record citations to R. 924–949.

employees employed in the business of the employer at locations set forth in the policy.[7] Larson refers to this type of statute as a "modified full-coverage statute." 4 A. Larson, The Law of Workmen's Compensation § 93.30, at 17–76 (1984). Coverage may be limited to specific business *locations*, but all employees at a given location are deemed covered. *Id.* Even the express exclusion of certain employees at a covered location is invalid as between the employee and the insurer who must pay the excluded employee. *Munz v. Underwriters at Lloyds*, 336 F.2d 798, 799 (9th Cir.1964). However, as between the employer and the insurer, the employer impliedly agrees to reimburse the insurer for payments made for which the employer paid no premiums. *Id.* The question is whether Arctic Guide Air Taxi was a location covered by the IICA policy.

Ehredt argues that the trial court erred because if the *employer* rather than the business is the named insured, there is a conclusive presumption that the policy covers *all* the employer's employees at *all* locations. Walters contends that the IICA policy covers only employees of Arctic Cash & Carry, the specified business location.

When the fatal crash occurred, the named insureds were "Arctic Cash & Carry, Mike O. Ehredt." The insured entity was an "individual" and the business appeared as "grocery store." The premium amount was $716 per year.

On January 24, 1979, the policy was amended by endorsement 3A (effective October 24, 1978) to add the air taxi as a named insured and "DBA" was added after Ehredt's name. The premium was increased by $10,033.

We conclude that a reasonable reading of the policy negates the assertion that Arctic Guide Air Taxi was a location covered under the policy at the time of the accident. Therefore, the conclusive presumption of AS 23.30.025(b) and the *Munz* decision do not apply and Ehredt may not claim the protection of the exclusive liability provision. We therefore affirm the directed verdict for Walters that Ehredt did not secure payment of compensation for Walters.

## V. APPROPRIATE MEASURE OF DAMAGES—ALASKA OR FLORIDA LAW

Ehredt and DeHavilland sought to apply Florida's law of damages, but the trial court applied Alaska's damage law.

Florida's law of damages differs from Alaska's law in several respects. Florida does not allow the recovery of prejudgment interest. *Smith v. Goodpasture*, 189 So.2d 265 (Fla.App.1966). Income tax is deducted from future wage awards, Fla. Stat.Ann. §§ 768.18(5), 768.21(6)(a) (West 1984), which are reduced to present value. Fla.Stat.Ann. § 768.21(1) (West 1984). The jury may consider the effect of inflation in determining lost wages. *Seabord Coast Line Railroad v. Garrison*, 336 So.2d 423, 424 (Fla.App.1976). Finally, the surviving spouse and children may recover for their own mental pain and suffering resulting from the decedent's death. Fla.Stat.Ann. §§ 768.21(2), 768.21(3) (West 1984).[8]

In Alaska, prejudgment interest is part of compensatory damages. *Davis v. Chism*, 513 P.2d 475 (Alaska 1973). Income taxes and inflation are not con-

---

**7.** AS 23.30.025(b) provides:
All policies of insurance companies insuring the payment of compensation under this chapter are conclusively presumed to cover all the employees and the entire compensation liability of the insured employer employed at or in connection with the business of the employer carried on, maintained, or operated at the location or locations set forth in such policy or agreement. A provision in a policy attempting to limit or modify the liabil-

ity of the company issuing it is wholly void except as provided in this section.

**8.** Ehredt also argued that attorney's fees are granted only under certain circumstances in Florida. Fla.Stat.Ann. § 57.105 (West 1984). However, attorney's fees are not an item of damage. Thus, even if we applied Florida law, Civil Rule 82 would control an award of attorney's fees. Alaska R.Civ.P. 82.

sidered in awarding future lost wages, *Yukon Equipment v. Gordon*, 660 P.2d 428, 434 (Alaska 1983), nor are such awards reduced to present value. *Beaulieu v. Elliott*, 434 P.2d 665, 671 (Alaska 1967). Alaska does not expressly allow the widow and children to recover for their own mental anguish. AS 09.55.580.

The measure of damages used in an action for wrongful death should be the law of the state with the most significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws §§ 175, 178 (1971). The place of injury is no longer the controlling factor. *Armstrong v. Armstrong*, 441 P.2d 699, 701 (Alaska 1968).

In determining the state with the most significant relationship to the occurrence and the parties, section 145 of the Restatement (Second) of Conflict of Laws sets forth the contacts to be considered:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.[9]

We conclude that the trial court was justified in applying the Alaska measure of damages because Alaska has the most significant relationship to the occurrence and the parties based on the events taking place here:

(1) The crash occurred in Alaska, on a flight entirely within the state;

(2) Ehredt is an Alaska domiciliary doing business in Alaska;

(3) Walters lived in Alaska from September 1975 until his death in October 1978, except for a five-month period spent in California and Florida; and

(4) The employment relationship between Walters and Ehredt was centered in Alaska.

The Florida residence of Walters' personal representative and family is not sufficient to require the trial court to apply the Florida measure of damages over their objection.

## VI. THE ALTERNATIVE JURY VERDICT FORM

The original verdict form allowed the jury to apportion negligence only between Walters and the defendants together rather than among each of the three parties. Eventually the jury used the alternative verdict form to find Walters 10% negligent, Ehredt 15% and DeHavilland 75%.

The alternative jury form was technically incorrect because it asked the jury to make a determination of no legal significance. A court may not consider the relative degree of fault among tortfeasors when determining their pro rata share of liability for contribution purposes, AS 09.-16.020, even when the plaintiff is also negligent. *Arctic Structures v. Wedmore*, 605 P.2d 426, 430–31 (Alaska 1979).

Ehredt contends the use of this form requires a new trial because the jury would not have reached the verdict it did had it known its allocation of fault among the defendants was of no legal significance in

9. The following factors are relevant in choosing the applicable rule of law:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971).

apportioning damages.[10] Walters contends that the error was harmless because the allocation of fault among the defendants was mere surplusage.

An error is harmless if the apportionment of negligence is mere surplusage. Annot., 46 A.L.R.3d 801, 843 (1972). The jury specifically found that Ehredt was negligent and his negligence was a legal cause of Walters' death. It then set an *aggregate* damage amount. Under these circumstances, the great weight of authority indicates the error was harmless. *See, e.g., Terry v. Raymond International, Inc.,* 658 F.2d 398, 404–405 (5th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982); *Slotkin v. Citizens Casualty Co.,* 614 F.2d 301, 317–18 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 396, 66 L.Ed.2d 243 (1980). The fact that a *defendant* is challenging the apportionment also justifies treating it as an "error without injury." *Id.* Therefore, we conclude that the error was harmless.

The judgment of the superior court is AFFIRMED.

---

**10.** Jury instructions 24, 24a and 26 concern the effect of Walters' negligence. The jury was not instructed on the law of contribution among tortfeasors.