ALASKA PULP
CORPORATION, Appellant,

v.

UNITED PAPERWORKERS INTERNATIONAL UNION; United Paperworkers International Union, Silver Bay Local 962; Leo Gernandt; and Alaska Workers' Compensation Board, Appellees.

No. S–3007.

Supreme Court of Alaska.

May 11, 1990.

---

T.G. Batchelor, Batchelor, Murphy & Brinkman, Juneau, for appellant.

Bradley D. Owens, Jermain, Dunnagan & Owens, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

### MATTHEWS, Chief Justice.

Leo Gernandt suffered a heart attack while participating in a labor union demonstration. In this workers' compensation appeal, the question is whether he was acting as an employee of the union at the time.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gernandt was employed by Alaska Pulp Corporation (APC) in 1967. His work involved operating machinery at APC's pulp mill in Sitka. In 1984, he sustained a back injury while working at the mill. For this injury, Mr. Gernandt received temporary total disability benefits as provided for by the Alaska Workers' Compensation Act (the Act).

While receiving workers' compensation benefits, Mr. Gernandt continued to be an active member of the United Paperworkers International Union, Local 962 (Local 962). Local 962 is organized under a charter from United Paperworkers International Union (International).[1] During July 1986, while Local 962 was on strike, Mr. Ger-

nandt and other Local 962 members held a demonstration on APC's premises. During the demonstration, the president of Local 962 sustained a broken leg when he was hit by a pickup truck driven by a non-union employee who was attempting to leave APC's premises. Shortly after a commotion created by this incident, Mr. Gernandt had a heart attack.

In November 1986, Mr. Gernandt filed an Application for Adjustment of Claim seeking permanent total disability compensation. The claim was based only on his back injury. APC answered, denying Mr. Gernandt's claim and obtained joinder of the Unions. APC claimed that Mr. Gernandt's heart attack was a subsequent intervening injury which occurred while employed with the Unions, thus making the Unions responsible for workers' compensation benefits under the last injurious exposure rule.[2]

The Board rejected APC's argument and dismissed all claims against the Unions. It found that Mr. Gernandt participated in the demonstration without compensation and, therefore, there existed no employee-employer relationship between Mr. Gernandt and the Unions.[3] The superior court affirmed, and APC appeals to this court.

## II. DISCUSSION

The Act extends coverage to "employee[s]." AS 23.30.010. It defines an employee as a person employed by an employer, and an employer, in part, as "a person employing one or more persons in connection with a business or industry."[4]

---

1. Where appropriate, Local 962 and International will be referred to collectively as the "Unions."

2. The last injurious exposure rule applies when work for successive employers combines to produce an employee's disability. The rule imposes full liability on the most recent employer. *See,* 4 A. Larson, *The Law of Workmen's Compensation* § 95.20 (1986).

3. The Board also decided that even if the demonstration was employment activity, it was nevertheless excluded from coverage under the part-time help exclusion of AS 23.30.230. We need not decide whether the Board's ruling on this ground was correct, since its decision can

be affirmed on the ground that there existed no employee-employer relationship.

We reject APC's contention that the lack of employee status was not an alternative ground for the Board's ruling and thus cannot serve as a basis for affirmance. "An appellee may seek to defend a judgment on any basis established by the record, whether or not it was relied on by the trial court or even raised before the trial court." *Demoski v. New,* 737 P.2d 780, 786 (Alaska 1987) (citation omitted).

4. AS 23.30.265 provides in part:
   (12) "employee" means an employee employed by an employer as defined in (13) of this section;
   (13) "employer" means the state or its political subdivision or a person employing one or

In interpreting these provisions, we have recognized that "before an employee-employer relationship exists under the Act, an express or implied contract of employment must exist." *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 313 (Alaska 1989) (citing *Whitney–Fidalgo Seafoods, Inc. v. Beukers*, 554 P.2d 250, 252 (Alaska 1976)). In *Childs*, we further explained that formation of such a contract generally requires mutual assent and consideration. *Id.* at 313–314.

■ APC does not suggest that an express contract for hire existed between Mr. Gernandt and either of the Unions. Instead, its position seems to be that Mr. Gernandt's participation in the union demonstration, and the availability of strike benefits to union members, gave rise to an implied contract of employment. The Board found no such contract, stating:

> [Mr. Gernandt] was not on either union's payroll, he was not a union officer or official.... [APC] argues that [Mr. Gernandt's] $55 per week strike benefit was, in fact, wages paid for work performed as a picket. We do not agree. The strike benefit was available to all striking union members who remained in good standing. *It was not paid in proportion to the amount of time spent on the picket line, but was a flat weekly benefit paid by [International] out of a fund created for that purpose.*

(Emphasis added)

Unless these factual findings are erroneous, the Board correctly found that Mr. Gernandt "was not under a contract of employment, either express or implied." If Mr. Gernandt had a right to a fixed strike benefit regardless of whether he picketed, his picketing was not bargained for or remunerated and thus not supported by consideration. The voluntary nature of such activity would also fall short of the requirement that the parties to an implied contract of employment manifest agreement to a binding obligation. *See Childs*, 779 P.2d at 314 ("An implied employment contract is

formed by a relation resulting from 'the manifestation of consent by one party to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'") (citations omitted); *see also Fox v. Mayfield*, 43 Ohio App.3d 12, 538 N.E.2d 1077, 1079–80 (1988) (holding that a union member who received strike benefits was not an employee of the union while picketing because the benefits were fixed, having no relationship to hours served, and thus were not wages paid by the union).

■ APC argues that strike benefits were paid for participation in the demonstration, contending that "it was expected and required that [Mr. Gernandt] pull picket duty or return strike benefits." The Board's contrary findings of fact will withstand this claim of error if supported by substantial evidence. *See Bailey v. Litwin Corp.*, 713 P.2d 249, 252 (Alaska 1986). Thus, these findings must be upheld if supported by "such relevant evidence as a reasonable mind might accept as adequate to support such a conclusion." *Black v. Universal Services, Inc.*, 627 P.2d 1073, 1075 (Alaska 1981) (quoting *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1049 (Alaska 1978)).

The Board's finding that picketing was not a condition to receipt of strike benefits was supported by adequate evidence. Wayne Glenn, president of International, testified by affidavit [5] that "Mr. Gernandt's later strike relief payments were in no way related to whether or not he attended [the union demonstration]. Mr. Gernandt would have received the same benefit even if he had not attended...." Jesse Jones, president of Local 962, testified by affidavit that Mr. Gernandt "has not received any wages from the Local Union. He has not been required to picket or carry out any duties for the Local Union." During his deposition, David Hiebert, another officer of Local 962 was asked, "Was there any requirement that anyone from the Union attend [the demonstration]?" He re-

---

more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state[.]

**5.** There was no live testimony before the Board.

sponded, "Absolutely not." Such evidence provides reasonable support for the Board's finding that picketing was not a condition to receipt of strike benefits.

Other depositions indicate that a practice developed among a majority of Local 962 members whereby those who did not pull picket duty assigned their strike checks to those who did. From this practice, APC argues that we should infer a requirement that members picket or return strike benefits. We decline to do so. These depositions also indicate that the practice of assigning checks to those who picketed was not mandatory. Thus, the inference that APC would have us draw is not a strong one. Even if considered a reasonable inference, the record lends it no more support than the opposite conclusion reached by the Board. Under such circumstances, we will defer to the Board's findings of fact, rather than reweigh the evidence or choose between competing reasonable inferences. *See Bailey,* 713 P.2d at 252.

APC also contends that the presumption of compensability of AS 23.30.120(1) "creates the presumption that Gernandt was an 'employee' for the purposes of the Act," and that the Board's failure to address this presumption was an independent error requiring reversal. We disagree.

Under AS 23.30.120(1), a workers' compensation claim is presumed to come within the provisions of the Act, absent substantial evidence to the contrary. We have recognized the propriety of applying this presumption and the last injurious exposure rule against a subsequent employer in a dispute between successive employers. *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 868 (Alaska 1985); *Providence Washington Ins. Co. v. Bonner,* 680 P.2d 96, 100 (Alaska 1984) (Rabinowitz, J., concurring).

However, these cases involved application of the presumption to the question of the relatedness of, or the causal connection between, the worker's injury and work done for the subsequent employer. *See*

*Veco,* 693 P.2d at 870–72; *Bonner,* 680 P.2d at 98–99. We have not considered application of the presumption where the subsequent party contests the existence of an employee-employer relationship. We hold that the presumption of AS 23.30.-120(1) does not apply to inter-employer disputes on the question of whether an employment relationship existed between the worker and the subsequent party.

The purpose served by judicial extension of the presumption of AS 23.30.120(1) to inter-employer disputes is only minimally furthered when the issue is whether there existed an employment contract between the subsequent party and the worker. We have reasoned that application of the presumption to inter-employer disputes simplifies workers' compensation proceedings, thus reducing the "hazards" such disputes pose for the injured workers. *See Veco,* 693 P.2d at 868 (citing *Bonner,* 680 P.2d at 100). As indicated, these cases involved disputes over the relatedness of, or causal connection between, the injury and work done for the subsequent employer. Such disputes can raise complex factual issues, and thus pose risks of delay in recovery for the injured worker.[6] However, whether there existed an employment contract between the worker and the subsequent employer is a much more straight-forward question, generally not requiring technical evidence. Thus, the need for simplification and avoidance of delay is of much less concern when successive employers contest the latter issue.

Moreover, we do not think that the pro-worker presumption of AS 23.30.120(1) was intended to facilitate proof of an employee status contrary to that asserted by the worker. An important purpose underlying the contract of employment requirement is to avoid "thrust[ing] upon a worker an employee status to which he has never consented ... [since doing so] might well deprive him of valuable rights...." 1C A. Larson, *The Law of Workmen's Compen-*

---

6. To establish work relatedness of the disability to employment is often a complex question requiring presentation of scientific evidence. *Thornton v. Alaska Workmen's Compensation Board,* 411 P.2d 209, 210 (Alaska 1966). *Thornton* did not involve prior and subsequent employers.

*sation* § 47.10 at 287–289 (1986). In a dispute between purported employers, a presumption that the subsequent party was indeed the worker's employer contravenes this purpose. Such use of the presumption risks thrusting upon a worker an employee status to which he never consented, and could deprive him of valuable rights. For example, once deemed to have had an employment relationship, any common law rights the worker may have had against the subsequent party are terminated.[7] We do not believe that the presumption of AS 23.30.120(1) was intended to adversely affect workers' rights in this manner.

■ Finally, APC argues that the Board erred by not applying the "relative nature of the work" test to determine Mr. Gernandt's employee status. We adopted this test to distinguish between employees and independent contractors for the purpose of determining whether an individual is an "employee," and thus eligible for workers' compensation benefits, under the Act. *Kroll v. Reeser*, 655 P.2d 753, 755 (Alaska 1982). However, both relationships presuppose a contractual undertaking. Therefore, in the absence of a contract for hire, the Board was not required to make this distinction.

AFFIRMED.

MOORE, Justice, concurring.

The court frames the issue in this appeal as whether the receipt of strike benefits creates an implied contract of employment between a worker and his union. *Supra* p. 1010. The court believes that this question turns on whether Local 962 conditioned payment of strike benefits to Gernandt on his participation in its demonstrations. *Id.* The Board found that there was no such contract because the strike benefit "was not paid in proportion to the amount of time spent on the picket line, but was a flat weekly benefit paid by [the union] out of a fund created for that purpose." The court applies the substantial evidence standard of review to the factual finding and affirms

the Board's conclusion that Local 962 did not employ Gernandt. *Supra* pp. 1010–1011.

I agree that Local 962 did not employ Gernandt and therefore that APC cannot shift its liability for payment of Gernandt's workers' compensation benefits to Local 962. However, I do not believe that this conclusion depends on whether Local 962 conditioned payment of Gernandt's strike benefits on his participation in its demonstrations. Rather, I believe that the nature of the legal relationship between a union and its members qua members precludes the possibility of the existence of an implied employment contract between them.

The legal relationship between a union and its members is not one of employment, but one of membership and association. Workers are not the agents of their union. Rather, a union is the agent of its members who collectively direct it to serve their interests. This is how the Labor Management Relations Act of 1947 ("Act") defines the relationship between a union and its members. The Act establishes that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." 29 U.S.C. § 157 (1988). The Act defines a "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose ... of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5). The Act specifically provides that labor organizations are not employers of their members qua members: "The term 'employer' ... shall not include ... any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of

---

7. Under AS 23.30.055, recovery under the Act "is exclusive and in the place of all other liability of the employer...." Thus, a worker who recovers under the Act against one deemed to be his employer cannot also recover common law damages against this same person.

such labor organization." 29 U.S.C. § 151(2).

Because a union is the agent of its members who collectively direct it, I would hold that a union does not employ its members qua members for purposes of the Alaska Workers' Compensation Act ("AWCA").[1] This court recently held that an implied contract of employment under AWCA requires "the manifestation of consent by one party to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Childs v. Kalgin Island Lodge,* 779 P.2d 310, 314 (Alaska 1989). In this case it is the workers who have the legal right to control the union. If anyone is an employer, it is the members, not the union.[2]

This legal relationship between a union and its members does not depend on whether payment of strike benefits is conditioned on participation in a union demonstration. The worker pays dues to the union for its services. One of these services is to provide benefits in case of a strike. Strike benefits are not wages paid to a worker for participating in a union demonstration, but part of the benefit package purchased with union dues.[3] Even if payment of strike benefits is conditioned on participation in a union demonstration, the strike benefit is still a benefit, albeit a conditional one, not a wage.

Under the court's analysis, the question whether a union employs its members must be decided in an ad hoc manner on the basis of the existence of an implied contract of employment. Because I believe that the legal relationship between a union

and its members qua members precludes the possibility of such a contract, I would hold that a union does not employ its members qua members for purposes of AWCA. Employers should not be able to shift to their employees' agent their duty under AWCA to pay for their employees' injuries.

---

1. Of course this rule does not apply to union members who are also hired by their union as union officials or staff members. Such persons clearly are employed by the union. The union's liability for compensation should be governed by the rules generally applicable to dual employers. *See Laborers & Hod Carriers Union Local 341 v. Groothuis,* 494 P.2d 808, 813 (Alaska 1972) (where a union and the state employed worker, both held jointly liable for compensation where worker provided at least incidental benefit to the union while primarily on business for the state).

2. The relationship between a partner and his partnership is analogous to that between a un-

ion member and his union. Virtually every state agrees that the partnership does not employ its partners for purposes of workers' compensation. 1C A. Larson, *The Law of Workmen's Compensation* § 54.30 (1986). Professor Larson explains that since "in an ordinary partnership each partner has by law an equal share in management, ... he is as much the employer as anyone can be...." *Id.* § 54.32.

3. It would be accurate to describe strike benefits as *insurance benefits to be paid in case of a strike.* Part of the union dues is a premium for this insurance.