Rebecca **HIMSCHOOT** and the State of Alaska, Legislative Affairs Agency, Appellants and Cross–Appellees,

v.

Thomas Edward **SHANLEY**, Appellee and Cross–Appellant.

Nos. S–5813, S–5843.

Supreme Court of Alaska.

Jan. 5, 1996.

---

J. Ron Sutcliffe, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellants/Cross–Appellees.

David V. George, Juneau, for Appellee/Cross–Appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MATTHEWS, Justice.

## I. *FACTS AND PROCEEDINGS*

In January 1989, while employed by the Alaska Marine Highway System (AMHS), Thomas Shanley was in a car accident. The vehicle in which Shanley rode was owned and driven by Rick Garrison. The vehicle that struck Garrison's vehicle was owned by the State of Alaska, and driven by the State's agent, Rebecca Himschoot of the Legislative Affairs Agency.

Shanley sued the State to recover damages for the injuries he sustained in the accident.

The State raised the affirmative defense that the Alaska Workers' Compensation Act (Act) was the exclusive remedy available to Shanley.[1]

Twenty-one months after the suit was filed the State moved to stay Shanley's case pending a determination by the Alaska Workers' Compensation Board (Board) as to whether the injury arose out of and in the course of Shanley's employment. Shanley opposed the motion arguing that (1) there was no claim pending before the Board because he had never filed a claim; (2) a stay was pointless because the State did not have standing to file a claim before the Board on Shanley's behalf; and (3) the superior court already had taken jurisdiction of the issue. After receiving Shanley's opposition the State filed a petition with the Board to determine whether Shanley's injuries arose out of his employment. The superior court denied the State's motion for a stay, the State moved to reconsider, and the court again denied the State's motion.

Following the superior court's denial of the State's motion for a stay, the parties stipulated that the court would determine whether or not the Act applied to the facts of this case in a summary proceeding. If the Act applied, it would be Shanley's only remedy. If the Act did not apply, the parties would proceed to a jury trial on the issue of damages, as the State had admitted liability.

At the summary proceeding hearing the witnesses were Shanley; Shanley's supervisor, George Reifenstein; and the three other men present in the car at the time of the accident: Lee Gavin of Oak Harbor, Washington, Grant Smith of Ketchikan, and Rick Garrison of Juneau.

Many facts were undisputed. Gavin, Smith, and Garrison were all in the food business. The three men met in Juneau to discuss bidding on a food contract with AMHS. AMHS was developing a new program for ordering food. In the past, AMHS had purchased food from numerous distributors; under the new plan AMHS would enter one contract for all its food needs.

On the morning of the accident, Gavin, Smith, and Garrison went to AMHS's offices to discuss procuring the contract. At some point, the three men ended up in Garrison's car with Shanley. Shanley did not fill out a leave slip for the time he was gone from work or tell his supervisor, Reifenstein, that he was going to a meeting.

The four men drove to the Juneau airport. They planned to eat lunch before Smith caught an afternoon flight back to Ketchikan. On the way to the airport, the accident occurred. After the accident, they continued to the airport and had lunch.

There were several disputes in the testimony relevant to whether Shanley's lunch was personal or work related. The main factual disputes were (1) was Shanley at the pre-lunch meeting at AMHS? (2) did Shanley and the three other passengers leave for lunch together, or did the three other men pick Shanley up later? (3) did the men discuss business in the car? (4) did the men discuss business at lunch?

The first disputed issue was whether or not Shanley was at the meeting at AMHS. Smith and Garrison testified that Shanley was at the meeting, Gavin did not remember but did not believe Shanley was there, and Shanley testified that he was not at the meeting. Reifenstein was not at the meet-

1. AS 23.30.055 provides:

    The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death. The liability of the employer is exclusive even if the employee's claim is barred under AS 23.30.022. However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or the employee's legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in admiralty for damages on account of the injury or death. In that action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of the employment, or that the injury was due to the contributory negligence of the employee.

ing, but he testified that he believed Shanley was there.

The second disputed issue was whether Shanley got in the car at the same time as the other three men, or whether they picked him up at his office after the meeting. Smith believed they all got in the car together. Garrison was unsure; he thought they all got in together, but admitted he could be mistaken. Shanley and Gavin both testified that the three men picked Shanley up later.

The third disputed issue was whether the men discussed business in the car on the way to the airport. Shanley could not remember, Smith could not remember either but assumed they did, Garrison testified they did talk about business in the car, and Gavin testified they did not.

The final disputed issue was whether the men discussed business at lunch. Smith and Garrison testified that they did discuss business at lunch. Shanley did not remember, but assumed they probably talked about some business. Gavin testified that they did not discuss business.

The parties focused on three other areas as relevant to whether Shanley was attending a business lunch: whether lunch with business associates was a normal part of Shanley's job, Shanley's lunch hour and leave procedures, and Shanley's relationship with Gavin.

Shanley and Reifenstein both testified that lunch with business associates was not a normal part of Shanley's job. While it was permissible and foreseeable, it was uncommon; Shanley only recalls going on business lunches twice over a several-year period. However, both Shanley and Reifenstein agree that Shanley had permission to meet with people in the food business to discuss the new single-buyer program. In fact, meeting with these people was part of his job, although a different department was in charge of selecting who would receive the state contract.

Shanley and Reifenstein also both testified regarding the normal work hours, lunch hours, and leave proceedings. Shanley's normal work hours were 8:00 A.M. to 4:30 P.M., with a one hour lunch break. Shanley's

lunch break was flexible, although he usually left from 1:00 to 2:00 to swim at the local pool. If Shanley left during the day for personal reasons, he would turn in a leave slip or make up the time at the end of the day. If Shanley worked more than seven and one-half hours per day he would receive comp time or be paid overtime.

In Shanley's answers to interrogatories, he claimed he went to a meeting with Reifenstein after his long lunch break on January 19, and then went home due to pain from the accident. The State seemed to assume that this meant Shanley did not stay until 4:30. Therefore, the State apparently concluded, the lunch would have been part of his work day. However, at the summary proceedings, Shanley testified that the meeting lasted until after 4:30 P.M. Therefore, according to Shanley, he made up the time he spent on his long, personal lunch at the end of the day. Reifenstein does not remember a meeting. Shanley did not turn in a leave slip for his long lunch, but he also did not receive comp time or overtime pay.

Finally, Shanley and Gavin both testified about their personal relationship. Both men claimed that they were good friends who were going out to lunch for purely personal reasons. However, Shanley was impeached on cross-examination by his earlier interrogatory, in which he claimed he had no personal relationship with any of the other men involved in the accident. The State also implied that Gavin was unreliable because he knew his friend Shanley would recover only if the lunch was personal. Finally, the State pointed out that Gavin had refused to disclose his personal tax returns to the State in his own claim for damages and had claimed to be working at the time of the accident.

The superior court ruled that Shanley's injuries did not arise out of his employment. It stated:

The court believes that the purpose of the lunch very well may have been business for the three people in the car other than [Shanley].[2] However, the preponderance of the evidence was that neither [Shanley] nor his employer regarded this lunch trip as business. The supervisor might well have approved of a meeting for

this length of time for the purposes of business with these individuals if he had been asked but there is nothing to suggest that was done.[3]

The State has the burden to prove that [Shanley] was acting in the scope of employment.[4] The State did not prove that [Shanley] was going to anything other than lunch or that it was for purposes of employment.

The court believes that for the purposes of this case the issue is how the employee and employer regarded the use of time, not how others may have viewed it.

---

[2] It stretches credulity to believe it was not.

[3] The circumstantial evidence surrounding the events is strong that the other three man [sic] in the car regarded this as a business trip. The evidence that [Shanley] did not regard it as a business trip was also strong. It included [Shanley's] testimony that he had only gone out with vendors in such a situation only once or twice in all his years with the ferry system, [Shanley] didn't think it was business, he wasn't at the meeting in the morning, other witnesses didn't know if he was at the morning meeting or were obviously confused. The others picked [Shanley] up outside his employment. He had obviously not been with them immediately before the lunch discussing business. He made no special arrangements to stay gone for business purposes. No witness said that business was discussed in the car before the wreck, it is hard to believe that much business was discussed after the wreck given the witnesses' description of the wreck.

[4] *Alaska Pulp v. United Paperworkers International*, 791 P.2d 1008 (Alaska 1990).

The case then proceeded to trial and a jury awarded Shanley $113,507.00 in damages.

After the jury verdict, Shanley was awarded prejudgment interest from the date the complaint was served on the State, February 5, 1991.

## II. *THE STATE'S APPEAL*

### A. *The Superior Court Did Not Err in Refusing to Stay the Proceedings.*

■ Two of our cases are relevant to the question whether the court should have stayed the suit. The first is *Alaska Workmen's Compensation Board v. Marsh,* 550 P.2d 805 (Alaska 1976). Marsh was injured by a member of the Loyal Order of the Moose on an evening in which he had been bartending at the Moose Lodge. *Id.* at 806. Marsh sued the Loyal Order of the Moose for negligence and filed for worker's compensation benefits. *Id.* The parties then agreed that Marsh would abandon any "action in the superior court and instead assert his rights, if any, for benefits" before the Board. *Id.* at 807. The Board refused to decide Marsh's claim, in part, because Marsh had a suit pending in the superior court. *Id.* On appeal, the superior court held that the Board should hear the compensation claim. *Id.* We agreed and held that there was no concurrent jurisdiction; because Marsh had given up any right to adjudication by the superior court only the Board had jurisdiction. *Id.* at 808–09. However, we added a footnote stating:

> Were it not for the settlement agreement, the superior court and the workmen's compensation board would have concurrent jurisdiction on the issue of Marsh's employee status at the time of injury.

*Id.* at 808, n. 8 (citing *Sea World Corp. v. Superior Court,* 34 Cal.App.3d 494, 110 Cal. Rptr. 232, 234 (1973)).

We affirmed that the superior court and the Board have concurrent jurisdiction in *Ehredt v. DeHavilland Aircraft Co. of Canada,* 705 P.2d 446 (Alaska 1985). In *Ehredt*, Walters was killed in a plane crash while piloting a plane owned by Ehredt and manufactured by DeHavilland. *Id.* at 449. Walters' widow filed a workers' compensation claim and sued both Ehredt and DeHavilland in superior court. *Id.* Ehredt sought a stay in court to allow the Board to decide the claim; the court denied the stay. *Id.* Walters' widow prevailed at trial and assigned all her rights against Ehredt to DeHavilland. *Id.*

On appeal, Ehredt argued that the "filing of a workers' compensation claim prior to his civil suit deprived the superior court of jurisdiction; therefore, its refusal to stay the action at law constitutes reversible error." *Id.* at 449–50. We cited *Marsh* for the proposition that the superior court and the Board had concurrent jurisdiction. *Id.* at 450. However, the question of "whether prior filing of a workers' compensation claim abrogates the concurrent jurisdiction of the supe-

rior court to hear the merits of the claim" had not been decided. *Id.* We noted that the Nevada Supreme Court had recently held that a trial court could proceed with an action at law as long as the Board had made no final disposition.[2] *Id.* We agreed with the Nevada decision and held:

> The policy goal is to coordinate the work of the courts and administrative agencies, therefore the question whether a court should defer depends on the unique facts of every case.
>
> Mechanical application of the rule does not further its underlying policy given the facts of this controversy. The major issue before the court was the construction of an insurance contract, which is a question of law uniquely suited to judicial resolution. Furthermore, Ehredt waited until six weeks before the trial date, after much discovery had taken place, to request a stay. Moreover, no action had been taken in the administrative proceeding. We therefore conclude that the superior court did not abuse its discretion when it refused to grant the stay.

*Id.* (citation omitted).

Shanley argues that the issue of concurrent jurisdiction is settled in Alaska: the superior court and the Board both have jurisdiction over workers' compensation cases under *Ehredt.* The State disagrees and argues that *Ehredt* involved a legal question that was "uniquely suited to ... judicial resolution." Thus, the State argues, unlike the present fact-based question, superior court jurisdiction was appropriate in *Ehredt.* The State concludes that *Ehredt* does not extend to fact-based questions.

The State's arguments do not withstand scrutiny. We rejected a bright line test in *Ehredt* and stated that "the question of whether a court should defer depends on the unique facts of every case." *Ehredt,* 705 P.2d at 450. We then highlighted the facts that affected our decision in *Ehredt,* namely the delay in requesting a stay, and the fact that no action had been taken in the administrative proceeding.

In this case, the question of whether or not Shanley was working while injured is not uniquely suited for judicial resolution. However, the two other factors listed in *Ehredt* are present in this case. The State waited twenty months after it filed its answer to request a stay. Furthermore, the State requested the stay before the Board had taken any action—before, in fact, a claim had even been filed with the Board. Therefore, as in *Ehredt,* we conclude that the superior court did not abuse its discretion when it refused to grant the stay.[3]

**B.** *The Superior Court Did Not Err in Refusing to Apply the Statutory Presumption of Compensability.*

Alaska Statute 23.30.120(a)(1) raises a presumption in favor of compensability. The statute states:

> (a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
>
> (1) the claim comes within the provisions of the chapter[.]

The State argues that this presumption should have operated in this case, forcing Shanley to prove that the accident was not work related.

The superior court found that "[t]he State has the burden to prove that [Shanley] was acting in the scope of employment. The State did not prove that [Shanley] was going to anything other than lunch or that it was

---

**2.** Although we held otherwise, we noted that Professor Larson's treatise stated that the majority of jurisdictions held that "it is an abuse of discretion for a court to refuse to stay a civil action initiated after a workers' compensation action is filed." *Ehredt,* 705 P.2d at 450 (citing 2A Arthur Larson, *The Law of Workmen's Compensation* § 67.33, at 12–111 (1983)). This is no longer true. The most recent edition of Larson states, "If claimant has brought a compensation claim, and while it is actually pending ... attempts to ... follow the action-at-law road, this attempt may be denied." *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 67.33, at 12–175 & 12–176 n. 96.1 (1994).

**3.** We will not reverse a trial court decision not to grant a stay unless the court abused its discretion. *Ehredt,* 705 P.2d at 450.

for purposes of employment."[4] (Footnote omitted.)

Whether or not the presumption applies is not a question of first impression. We addressed a similar issue in *Ruble v. Arctic General, Inc.*, 598 P.2d 95 (Alaska 1979). In *Ruble,* JIJ Nelson (JIJ) was hired to construct a highway. *Id.* at 96. JIJ hired Arctic General (Arctic) to supply and maintain the necessary equipment, and Arctic hired Ruble to operate some of the equipment. *Id.* To comply with state and federal requirements, JIJ put all the Arctic operators on its payroll, although Arctic remitted Ruble's wages to JIJ after JIJ paid the equipment rental fees. *Id.* Ruble was injured, and filed a workers' compensation claim against JIJ. *Id.* He then filed a negligence suit against Arctic. *Id.*

One issue in *Ruble* was whether the presumption of compensability applied in the negligence action. We held it did not: "[T]here are neither presumptions ... for or against finding an employment relation with respect to a particular employer." *Id.* at 97. *See also Avila v. Northrup King Co.,* 179 Ariz. 497, 880 P.2d 717, 725 (App.1994) ("That presumption, however, only arises where the employee attempts to hold a particular employer liable for workers' compensation benefits. It does not apply where, as in this case, an employee who has workers' compensation coverage seeks to hold a particular employer liable as a third party.").

Another case bearing on this issue is *Alaska Pulp Corp. v. United Paperworkers International Union,* 791 P.2d 1008 (Alaska 1990). In *Alaska Pulp,* Gernandt was injured while picketing his former employer, Alaska Pulp Corporation, as part of a union demonstration. *Id.* at 1009. Gernandt was receiving strike benefits from his union at the time. *Id.* at 1010. Therefore, Alaska Pulp argued, the presumption of compensability raised the presumption that Gernandt was a union employee when he was injured. *Id.* at 1010–11. We rejected Alaska Pulp's claim, stating "we do not think that the pro-worker presump-

tion of AS 23.30.120(1) was intended to facilitate proof of an employee status contrary to that asserted by the worker." *Id.* at 1011.

*Ruble* and *Alaska Pulp* illustrate that the presumption of compensability may not be used against an injured worker. Thus, the superior court properly placed the burden of proving work relatedness on the State.

C. *The Superior Court Did Not Err in Finding that Shanley's Injury Did Not Arise out of and in the Course of Employment.*

■ The State argues that Shanley's injury arose out of his employment for AMHS under a theory that the trip in the car had a dual personal and business purpose, and that the latter was at least a substantial reason for the trip:

> In *Anchorage Roofing Co. v. Gonzales,* 507 P.2d 501, 504 (Alaska 1973), the court quotes Mr. Justice Cardozo in the landmark case of *Marks' Dependents v. Gray,* [251 N.Y. 90] 167 N.E. 181 (N.Y.1929):
>
>> We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability [employment relatedness], the inference must be permissible that the trip would have been made though the private errand had been cancelled.... The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment.
>
> *Anchorage Roofing* at 504.

Shanley responds, quoting a like standard:

> [W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the absence of the business purposes and would have been dropped in the event of the failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because

4. Whether the statutory presumption of compensability applies is a question of law. We review questions of law *de novo,* adopting the rule of law which is "most persuasive in light of

precedent, reason and policy." *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (citations omitted).

the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.

1 Larson, *The Law of Workmen's Compensation* § 18.12, at 4–274.

The superior court, noting that the burden of proof was on the State, found that "[t]he State did not prove that [Shanley] was going to anything other than lunch or that it was for purposes of employment.".[5] Thus, the superior court concluded that the evidence did not show by a preponderance standard that business was one of the reasons Shanley was in the car.[6]

Shanley testified that he would not have gone to lunch if his friend, Gavin, had cancelled. In addition, Shanley testified he didn't really remember much talk about business or consider the lunch part of his job. Gavin testified that the men did not talk about business in the car or at lunch. Although there was much contrary evidence, the two men's testimony was evidence upon which the superior court could rely to find that business was not a purpose of the trip. We conclude that the superior court did not err in finding that the accident did not arise out of and in the course of employment.

## III. SHANLEY'S CROSS–APPEAL

■ Shanley received prejudgment interest from the date the complaint was served on the State, February 5, 1991. He argued that interest should have begun to run on December 24, 1989. Under AS 09.30.070(b), "prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification

that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier." The statute goes on to state that "written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury...." AS 09.30.070(b).

Shanley argues that the State received written notification of his claim on December 24, 1989, and supports his argument with the following facts. A State claims adjuster wrote Shanley on December 13, 1989. The letter, in its entirety, stated:

It is my understanding that in talking with Mr. Gavin you were injured in an accident on January 19, 1989 and it is also my understanding that you are currently represented by an attorney. Would you please forward this letter to your attorney immediately as I will need a letter of representation from him, and I will want to talk to him.

On December 21, 1989, Shanley's lawyer responded by writing the State's adjuster. Shanley's attorney stated: "I have undertaken the representation of Mr. Shanley but am not prepared to discuss the case with you at this time." Shanley argues that the date this letter was mailed, plus three days for delivery (December 24, 1989), is the day the State received written notice that a claim would be made on his behalf.

The State contends that the issue is whether Shanley gave anything that "constitutes notice of intent to sue as required by AS 09.30.070." The State argues that a letter that merely states representation and refuses to discuss a case should not qualify as written notification.

---

**5.** The superior court also stated, "The court believes that for the purposes of this case the issue is how the employee and employer regarded the use of time, not how others may have viewed it." The State argues that this is legally incorrect. We disagree with the State, and hold that when neither the employee nor the employer regard an act as for the·purpose of business, other people's opinions are not relevant. *Cf.* 1 Larson, *The Law of Workmen's Compensation* § 18.18 at 4–284) ("When two or more persons go on an automobile trip together, the character of the trip as business or personal must be judged separately as to each individual. The fact that, as to others,

the trip would have gone forward for business reasons if the particular claimant's personal purpose had failed, is immaterial; the question is whether this claimant would have joined in this trip if his own personal business had failed.").

**6.** We will not reverse the superior court's factual findings unless they are clearly erroneous. *City of Nome v. Catholic Bishop of N. Alaska*, 707 P.2d 870 (Alaska 1985) ("[W]hen a court is the fact finder for an otherwise administrative proceeding, the traditional 'clearly erroneous' standard of review applies.").

The superior court found that neither the State's letter to Shanley, nor Shanley's attorney's response met "the requirements of AS 9.30.070(b). Interest should commence to run when the complaint was served on the State."[7]

We agree with Shanley. In our view a prudent person upon receipt of Shanley's lawyer's letter in response to that of the adjuster would believe that a claim would be made against the State for Shanley's injuries.[8] We therefore hold that the superior court erred in calculating prejudgment interest from the date the complaint was filed, rather than December 24, 1989.

## IV. CONCLUSION

We AFFIRM the judgment except as to the date from which prejudgment interest was calculated. The award of prejudgment interest is VACATED and this case is REMANDED for calculation of prejudgment interest from December 24, 1989.

---

**7.** Because the issue is whether, as a matter of law, a prudent person would have believed that a claim would be made against the State, we review the superior court's decision *de novo*, adopting the rule of law which is "most persuasive in light of precedent, reason and policy." *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987) (citations omitted).

**8.** It appears that the State did realize this. On December 27, 1989, the State's adjuster wrote a colleague, stating:

> I have found out that claimant Mr. Shanley is ... complaining of injuries however he is represented as you can see by the attached letter.... I am following this claim rather closely however, since Mr. Shanley has already been represented by an attorney and since Mr. Gavin seems to be rather defensive I seriously question if we will be able to keep this from having attorneys in our defense.