**SELID CONSTRUCTION CO., Inc.,**
Appellant,

v.

**GUARANTEE INSURANCE CO., Alaska In-**
**dustrial Board, and Paul B. McCracken,**
Appellees.

No. 27.

Supreme Court of Alaska.

Sept. 8, 1960.

Charles E. Cole, Fairbanks, for Selid Construction Co.

Plummer & Delaney, Anchorage, for Guarantee Ins. Co.

Warren A. Taylor, Fairbanks, for Paul B. McCracken.

No appearance for Industrial Board.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

This is an appeal from an order and judgment of the District Court for the Territory of Alaska at Fairbanks, which set aside certain findings of the Alaska Industrial Board and ordered the entry of findings that appellant was the employer of claimant, Paul B. McCracken, at the time of his injury rather than Anchorage Pavers, Inc., as had been found by the Board. The action of the District Court was based on its conclusion that the findings of the Board as to the identity of claimant's employer and its conclusions of law based on the undisputed facts were erroneous.

The main question to be resolved here is whether the facts found by the Board were supported by the evidence and whether they had the legal effect of terminating an existing employer-employee relationship between claimant and Selid Construction Co., Inc. and creating such a relationship with Anchorage Pavers, Inc. for compensation purposes.

This court is of the opinion that the undisputed facts before the Board do not support its findings, that its conclusions of law were erroneous and that the District Court was correct in its order.

Claimant was hired by Selid Construction Co., Inc. in July of 1955 as an oiler and was carried on that corporation's payroll through September 17, 1955. On September 17, 1955, claimant was advised by Selid Construction's foreman that he was to report for work on the hot plant at Anchorage Pavers, Inc. for a week or ten days, after which time he would return to work on the rock crusher for Selid Construction. One Ove Selid was the sole shareholder in and president of both corporations, which were operating in the area of Fairbanks, Alaska. Approximately 30 days prior to September 17, 1955, Selid Construction had leased the hot plant also commonly know as the batch plant to Anchorage Pavers. Claimant had, on two previous occasions, been sent by Selid Construction to oil the batch plant machinery and had been paid by Selid Construction for the work performed. When claimant was advised by his foreman that he was to work on the batch plant for a temporary period, his understanding was not that he was being transferred to Anchorage Pavers' payroll. Nothing was mentioned on this subject. He was told that he was relieving an absent employee temporarily and that he would soon be back on the rock crusher with Selid Construction. Claimant testified that he did not agree to a transfer to Anchorage Pavers' payroll, that he would not

have agreed to such a transfer as he had asthma and the work on the hot asphalt plant was undesirable for that reason. He also testified that he had no knowledge that he would ever be transferred to Anchorage Pavers' payroll. In response to a series of highly leading questions put to him by a Board member claimant did admit that it made no difference to him then who paid him as long as he got paid, or now, as long as he got compensation.

At about 5:30 p. m. September 17th, after completing his work on the rock crusher for Selid Construction, claimant went to the batch plant and worked something over forty-five minutes oiling the machinery. He returned to the batch plant at about 3:15 a. m. September 18th to complete this work. While he was oiling the bucket conveyor another employee activated the machinery and claimant was severly injured. Claimant was paid by Selid Construction for all work performed by him through September 17th, including work on the batch plant performed after 5:30 p. m. on that date. A check dated September 29, 1955, drawn on Anchorage Pavers in claimant's favor for $6.59, was deposited to his bank account by someone other than himself, presumably an office employee of Anchorage Pavers. This check was in payment for one hour's work performed by him on September 18th. A daily time card on a Selid Construction form indicated however that claimant performed one hour's work for Selid Construction on September 18th at the hot plant and is signed by "B. Mc" on behalf of Selid Construction. A written statement to the Board by J. R. Miller, an accountant for Selid Construction, dated November 9, 1955, states that claimant was switched from Selid Construction's payroll to that of Anchorage Pavers on September 18, 1955.

Ove Selid testified that claimant had been working for Anchorage Pavers for about a week before he was injured but hadn't been transferred on the payroll. In response to other questions put to him at the hearing, he stated emphatically that claimant had actually been transferred a week before the accident, but had been paid by Selid Construction for all work performed prior to the morning of the accident. He admitted that he had not discussed a transfer with claimant and that claimant's testimony that no one had discussed the matter with him was probably correct. He disagreed with the statement of his accountant J. R. Miller when it was read to him. In response to other questions he declared that he was unable to answer because he no longer had access to the knowledge and information of accountant Miller, nor could he locate certain records kept by that employee. His testimony on this point was vague, confused and directly at variance with clearly established facts.

No party to the appeal questions the extent of claimant's injuries. Nor is it questioned that he is entitled to compensation. He has been paid only $300, however, as Selid Construction contends he was actually an employee of Anchorage Pavers. Guarantee Insurance Co., insurance carrier for Anchorage Pavers, contends that he was employed by Selid Construction, but that if he was an employee of Anchorage Pavers, he is not covered by their insurance because that corporation at the time of claimant's injury was engaged in performing a defense contract for the United States Government, and that claimant would have to be compensated under the provisions of the Defense Base Act, 42 U.S.C.A. § 1651 et seq., over which the Alaska Industrial Board would have no jurisdiction.

Ove Selid had placed insurance for the two corporations through separate agents, but in the belief that both policies covered all of the activities of both corporations. The agent of Guarantee Insurance Co. testified that the policy it had issued to Anchorage Pavers did not cover Defense Base Act work.

The court history of this case is fairly involved. A full Board review and hearing was held on July 26, 1956, which resulted in a Board award dated November 26, 1956, finding claimant to have been the employee of Anchorage Pavers and awarding compensation. A review of that award

by the District Court for the Territory of Alaska in cause No. 9370 resulted in an order dated May 15, 1957, which set aside the findings, gave instructions on the applicable law and ordered the Board to make specific findings as to the identity of claimant's employer. The reconsidered decision of the Board dated November 19, 1957, found that claimant was the employee of Anchorage Pavers and awarded compensation. The attorney member of the Board dissented. Various motions were then made by appellees in cause No. 9370 to procure review by the District Court of the award of November 19, 1957, and a separate proceeding designated as cause No. 9840 was also filed to accomplish the same purpose. Cause No. 9840 was commenced by Guarantee Insurance Co. and in that action appellant was not named a party. The District Court consolidated causes 9370 and 9840 for review and on January 30, 1959, made the order to be considered on this appeal. Appellant appealed the order of January 30, 1959, to the Court of Appeals for the Ninth Circuit where it was dismissed on June 17, 1959, for lack of jurisdiction.[1] Notice of Appeal to this court was filed on October 30, 1959.

Appellant's argument is that claimant, pursuant to the instructions of his foreman, went to work on the batch plant for what was understood to be temporary duty and since claimant knew the plant was being operated by Anchorage Pavers, there was an implied consent to the transfer. The work being performed is alleged to have been essentially that of Anchorage Pavers and a complete transfer of control over claimant's activities is claimed to have occurred. To these alleged facts appellant applies the lent employee doctrine and concludes that claimant was the special employee of Anchorage Pavers for compensation purposes. Appellant argues that the

fact that claimant had not yet been transferred to Anchorage Pavers' payroll when he was injured is without significance.

There is ample authority for appellant's argument provided the facts before the Board were as alleged in its brief. Innumerable cases have supported the loaned employee theory by holding that a special employer to whom another's employee is loaned will become liable for injuries compensable under workmen's compensation where there is a contract of hire, express or implied, between the employee and the special employer, where the work being done at the time of the injury is essentially that of the special employer, and the right to control the details of that work is in the special employer.[2] The doctrine appears to have originated out of compensation cases and by resolving any doubts concerning a given relationship in favor of the employee being eligible for compensation.[3]

Board finding No. 7 states in part, "knowing that Anchorage Pavers, Inc. was operating the batch plant McCracken agreed to his transfer to Anchorage Pavers, Inc." We hold that consent to a change of employers cannot be implied in this case. Claimant testified unequivocally that no official of Selid Construction had told him he was being transferred, that he never agreed to and would not have accepted such a transfer, that he was "willing to try to endure" the hot plant for a few days to get back on the crusher. It would not be logical to hold that claimant impliedly consented to a change in status that is decidedly to his detriment and which he certainly would not have expressly consented to had he known all the facts. Furthermore, the work to be performed was not essentially that of Anchorage Pavers. Claimant was classified as an oiler and his primary duty was to oil the hot plant which was owned by Selid Construction. These

1. Selid Construction Co., Inc. v. Guarantee Insurance Co., Inc., Paul B. McCracken, and Alaska Industrial Board, 9 Cir., 1959, 268 F.2d 913; Parker v. McCarrey, 9 Cir., 1959, 268 F.2d 907.

2. Stuyvesant Corp. v. Waterhouse, Fla. 1954, 74 So.2d 554; Torsey's Case, 1931, 130 Me. 65, 153 A. 807.

3. Ellegood v. Brashear Freight Lines, St. Louis Mo.App.1942, 236 Mo.App. 971, 162 S.W.2d 628.

facts alone preclude application of the loaned employee doctrine. Others will be mentioned later.

Convincing authorities have been cited by appellee to sustain its contention that the employer-employee relation between claimant and Selid Construction had not been terminated.

■ The relationship of employer-employee can only be created by a contract, which may be express or implied. Once created, the relationship cannot be changed to substitute another employer without the employee's consent. The employee must have understood and agreed before there can be any transfer to another employer.[4] Where the employee commences to serve another at the direction of his employer, no new relationship is necessarily created. He may simply be performing his duty to the employer who gave the order. Even though his actions may be controlled by the new master, no new relationship is created in the absence of an express or implied contract between the employee and the new master. Consent of the employee to a change in masters cannot be implied merely from his obedience to the order of his master.[5]

In the case before us claimant was ordered by Ove Selid, through his foreman at the Selid Construction plant, to report to the hot plant for temporary duty. He had performed such temporary duty before and had not been transferred to Anchorage Pavers' payroll. The possibility that he might be transferred to Anchorage Pavers' payroll was never mentioned to him on this occasion. He would not have agreed to such a transfer and had no knowledge that he had been transferred on the payroll records until approximately two weeks after his injury and while still in the hospital. Claimant was paid by Selid Construction for the work performed at the hot plant on September 17th. Some official of Selid Construction had turned in a Daily Time Card showing that the one hour of work performed by claimant at the hot plant on September 18th was for Selid Construction, but claimant was, nevertheless, eventually paid for his hour's work by Anchorage Pavers. Claimant was not transferred to the Anchorage Pavers' payroll until after his injury. Any argument that there had been a change in control over claimant's activities is considerably weakened by the fact that his temporary transfer was at the direction of Ove Selid who was president of and owned all of the stock in both corporations. Claimant was merely carrying out Ove Selid's order, relayed to him through his foreman, as he had done in the past. The most that can be observed in the way of change of control is that claimant may have been taking orders from a different foreman, who was also under the over-all direction of Ove Selid.

Under these facts we hold that the District Court was correct in finding that there was no substantial evidence upon which the Board could find that claimant was the employee of Anchorage Pavers and that the legal effect of the undisputed facts brought out at the hearing required a finding that claimant was an employee of Selid Construction at the time of his injury.

Appellant contends that the order of the District Court of January 30, 1959, setting aside the Board award of November 19, 1957, is void as to it because it was not made a party to cause No. 9840 and had no notice of the hearing or opportunity to be heard.

■ As mentioned earlier in this opinion, several motions were filed by claimant and Guarantee Insurance Co. in cause No. 9370 seeking review of the Board's award of November 19, 1957. Appellant was a party to cause No. 9370 and had notice of at least some of these motions. Cause No. 9840, also commenced by Guarantee Insur-

---

4. Gonyea v. Duluth, Missabe & Iron Range Ry. Co., 1945, 220 Minn. 225, 19 N.W.2d 384; Murray v. Union Ry. Co. of New York City, 1920, 229 N.Y. 110, 127 N.E. 907.

5. Rhinelander Paper Co. v. Industrial Commission, 1931, 206 Wis. 215, 239 N.W. 412; Gipson v. Skelly Oil Co., 5 Cir., 1945, 152 F.2d 588.

ance Co., likewise sought review of the Board's award of November 19, 1957. The motions in cause No. 9370 and the complaint in cause No. 9840 were consolidated for review at a hearing of the motion calendar on January 16, 1959. Neither appellant nor Anchorage Pavers were represented in court on that date although they had notice of and were parties to matters to be heard concerning causes No. 9370 and 9863, respectively, the latter cause being a separate tort action against Anchorage Pavers only.

A careful study of the entire record discloses what appears to be an extremely casual attitude on the part of Ove Selid toward providing representation for his two corporations. Neither Anchorage Pavers nor appellant were represented by counsel at the main hearing before the full Board on July 26, 1956. William V. Boggess appears later in the proceedings as counsel for appellant alone, but was permitted to withdraw on February 14, 1958. No other counsel appeared for appellant until its appeal was filed. Although the Board received a copy of attorney Boggess' motion to withdraw, as far as the record discloses, it was never advised that withdrawal had been permitted by a court minute order and it continued to mail notices of awards and hearings to him.

In the transcript of the hearing of July 26, 1956, the court notes from the testimony of Ove Selid and Earl H. Jones, agent for Guarantee Insurance Co., that the two had entered into a verbal agreement that Jones would recommend that his company refund all insurance premiums paid by Anchorage Pavers, less a few small losses paid, so that Ove Selid could pay claimant's hospital bills. This agreement was made in the belief by both parties that claimant would be satisfied if his medical expenses were paid and he was "kept busy" thereafter. This may explain why counsel was never retained for Anchorage Pavers and none employed to replace Mr. Boggess for appellant

until its appeals were commenced. The court is convinced that appellant, through its counsel before his withdrawal, received enough notice of the nature of the proceedings that resulted in the order of January 30, 1959, that it could have appeared and been heard if it had been sufficiently interested.

■ Appellant assigns as error the fact that an amended award entered by the Board on September 8, 1959, ordered appellant to pay a 20% penalty in accordance with the provisions of Sec. 43–3–3 A.C.L.A. 1949. The Board record discloses that notice of the August 24, 1959 hearing of Application for Adjustment of Claim was sent to William V. Boggess by certified mail on July 1, 1959. As far as the Board had been advised Mr. Boggess was still counsel for appellant. The Board record does not disclose who attended the hearing which resulted in the amended award of September 8, 1959. In any case, no effort was made by appellant to have this action of the Board reviewed by the Board or the District Court. The present appeal, by the terms of the notice, is concerned only with the validity of the order of the District Court of January 30, 1959, which order was embodied in a judgment dated February 7, 1959. This court therefore declines to consider the matter in this proceeding.

■ Appellant also points out what it believes to be an error in computation in a judgment which it alleges has been lodged with the District Court. A copy of the judgment complained of is not in the record, the matter is not within the scope of the present appeal and is barely mentioned in the brief. We decline to attempt to consider it in this proceeding. If a mistake in computation has been committed the Superior Court has full authority to correct it.

The order of the District Court of January 30, 1959, later embodied in a judgment of that court dated February 7, 1959, is affirmed.