**Edna CLUFF, Appellant,**

v.

**NANA–MARRIOTT, Alaska National Insurance Co., Universal Ogden Services, Eagle Pacific Insurance Co., and the Alaska Workers' Compensation Board, Appellees.**

**Edna CLUFF, Appellant,**

v.

**NANA–MARRIOTT, Appellee.**

Nos. S–6083, S–6223.

Supreme Court of Alaska.

March 24, 1995.

---

William J. Soule, Law Offices of William J. Soule, Anchorage, for appellant.

Joseph M. Cooper, Laurence Keyes, Russell, Tesche & Wagg, Anchorage, for appellees Nana–Marriott and Alaska Nat. Ins. Co.

Robert B. Mason, Law Offices of Mason & Griffin, Anchorage, for appellees Universal Ogden Services and Eagle Pacific Ins. Co.

## ORDER

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

On consideration of Appellant Cluff's motion for order clarifying opinion, filed on February 14, 1995, and the responses filed on February 15 and 16, 1995,

IT IS ORDERED:

1. The motion is interpreted as a petition for rehearing.

2. The ten-day filing requirement in Appellate Rule 506(b) is waived under Appellate

Rule 521, because Appellant could not reasonably have anticipated Nana–Marriott's lack of jurisdiction defense in the superior court until it was actually made. Furthermore, the motion was filed five days after Appellant was aware of the defense.

3. The petition for rehearing is GRANTED.

a. Opinion No. 4162 issued on January 27, 1995, is WITHDRAWN.

B. Opinion No. 4181 is issued in its place with the first sentence in the last paragraph at page 21 amended to read as follows: "We therefore REMAND this case to the Superior Court with directions to remand it to the Board for further proceedings consistent with this opinion."

4. The Clerk shall award Appellant Cluff actual attorney fees for the expense of making the motion to clarify against Nana–Marriott.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MATTHEWS, Justice.

Edna Cluff appeals from a Workers' Compensation Board (Board) determination that NANA–Marriott (NANA) was her employer for workers' compensation purposes at the time of her injury. Although Cluff was an employee of Universal Ogden Services (Universal) on the day of her injury, and has never been employed by NANA, she was taking a physical stress test which NANA required potential employees to take in order to be eligible for hire when she was injured.

## I. FACTS AND PROCEEDINGS

On October 21, 1991, Cluff, a housekeeper employed by Universal to work at an ARCO facility on the North Slope, was injured while participating in a stress test at the facility. This test, which involved physical exercises and some lifting, was conducted by a physical therapist for the purpose of testing potential employees of NANA. ARCO had recently awarded NANA the contract for services which Universal had been providing. NANA required all potential employees to take the test.

Uncontroverted evidence establishes 1) that the physical therapist who ran the test, Marsha Wakeland, had contracted with NANA and conducted the test at its direction; 2) that the test was for the purpose of evaluating potential NANA employees and reducing injuries among those hired; 3) that Universal paid Cluff for the time during which she took the test; 4) that NANA never paid Cluff any wages for this time period; and 5) that NANA never hired Cluff. The parties dispute, however, whether Cluff applied for or intended to apply for a position with NANA. The Board did not resolve any of the factual disputes between the parties.

Cluff testified that she never intended to apply for a position with NANA but rather intended to wait for a position to open up with Universal. When told by one of her supervisors while she was in Fairbanks that she could apply for work with NANA at NANA's Anchorage office, she refused. She also testified that she only participated in the stress test on instructions from her supervisor.

Universal and NANA assert, however, that Cluff was knowingly attempting to secure employment with NANA. A NANA supervisor, Hank Henry, testified that Cluff approached him about possible employment and that Cluff was concerned about having missed interviews which NANA had already conducted with Universal employees. He testified that he informally interviewed her and promised to recommend her to NANA's human resources department. He did not have authority to hire her. Wakeland testified that, before she began the testing, she told all test participants that she worked for NANA and what the purpose of the test was. Cluff's supervisor denied instructing Cluff to take the test and stated that Cluff had told her that she had interviewed with Henry.

Cluff filed a report of injury with the Board naming Universal as her employer. In this report, she stated that she was injured "doing stress test for NANA/Marriott." Universal controverted Cluff's claim, contending that her injury did not arise out of and in the course and scope of her employment. NANA accepted responsibility for Cluff's claim and paid her temporary total

disability and medical benefits. On May 7, 1992, Cluff filed an application for adjustment of claim against Universal, and NANA petitioned for a determination of Cluff's correct employer.

After a hearing, the Board determined that NANA was Cluff's employer for workers' compensation purposes. It first found that Cluff was performing services for NANA under an implied contract of employment and on rehearing concluded that the stress test was an integral part of a tryout period.[1,2] Cluff appealed to the superior court; the superior court affirmed the Board. Cluff appeals to this court.

In October 1993, Cluff brought a civil action for negligence against NANA, the physical therapist who conducted the stress test, and the therapist's employer. NANA moved for partial summary judgment based on collateral estoppel arising from the superior court's decision affirming the Board's determination that NANA was Cluff's employer for workers' compensation purposes. The superior court granted NANA's motion for partial summary judgment and then entered final judgment against Cluff. Cluff appeals from these orders. Cluff's workers' compensation and civil suit appeals have been consolidated on appeal.

## II. DISCUSSION

### A. *Did the Board err by failing to determine whether Universal was Cluff's employer for workers' compensation purposes before deciding whether NANA was liable for benefits?*

The decision of the Board only addressed the question of whether Cluff was an employee of *NANA* for purposes of workers' compensation. The Board did not determine whether *Universal* could also be held liable for workers' compensation benefits. The Board did not resolve any of the factual disputes between Cluff and Universal and NANA. Apparently, the Board assumed that if it found NANA to be Cluff's employer for workers' compensation purposes, this would either preclude liability on the part of Universal or make such liability irrelevant.

■■■ The Board's approach was incorrect.[3] The Board failed to take into account the doctrine of lent employment. Under the lent employment doctrine, if one employer lends an employee to another employer, the lending employer is called the "general" employer and the other employer is called the "special" employer. *Ruble v. Arctic Gen., Inc.*, 598 P.2d 95, 97 n. 3 (Alaska 1979); 1B Arthur Larson, *The Law of Workmen's Compensation* § 48.00, at 8–434 (1992). As we will explain, the requirements for finding an employment relationship for workers' compensation purposes between a lent employee and a special employer are stricter than the standards for finding an employment relationship between an employee and an employer where there is only one employer.

■■■ If Cluff's version of the facts is accurate, her general employer was Universal and NANA was, at most, her special employer while she was on loan to NANA to take the stress test. Therefore, the Board's decision was erroneous for three reasons, which shall be explained in detail below.

---

1. In *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989), we adopted the "tryout exception to the general rule that a contract for hire must exist before benefits can be awarded." We stated that "when an employer exposes potential employees to risks inherent in a tryout period and the applicant is under his direction or control, any injury resulting during such a period is compensable as a matter of law." *Id.* at 315.

2. The Board issued two decisions because additional documentation erroneously left out of its file was discovered after the first decision. It is unclear whether the Board's reliance on the tryout exception in its second decision was meant as an additional reason, as a clarification, or merely as a restatement of its first decision. The Board's statement in its second decision that it was "reaffirm[ing]" its previous decision and its reliance in both decisions on the stress test being "integral" to NANA's business indicate that it did not distinguish between an implied contract and the tryout exception.

3. This court independently reviews Board decisions on questions of law. *Childs*, 779 P.2d at 313 (Alaska 1989). The Board's factual determinations are reviewed under the substantial evidence test. *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69 (Alaska 1993). "Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board's decision." *Id.* at 72.

First, in a lent employee situation, the statutory presumption of compensability in our workers' compensation system applies to the general employer; the Board failed to apply the presumption to Universal. Second, a special employer may only be liable for worker's compensation if there is an express or implied contract between the special employer and the employee; the Board erred when it determined that an implied contract existed between Cluff and NANA. Third, the tryout exception does not apply to a special employer in a lent employee situation; the Board decided that the tryout exception applied to NANA.

### 1. The presumption of compensability applies to Cluff's claim that Universal was responsible for her injury.

▇ The presumption of compensability for workers' compensation claims is codified in AS 23.30.120(a)(1), which provides:

> In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary that (1) the claim comes within the provisions of this chapter
>
> ....

Cluff argues that the Board erred in failing to apply the statutory presumption against Universal. Universal and NANA argue that the presumption is inapposite, because the presumption only establishes that the claim comes within the provisions of the workers' compensation act, which neither disputes. Universal and NANA argue that the presumption has no effect on the determination of which employer was liable for Cluff's injury once they concede that the injury itself was compensable and that NANA was liable.

Universal and NANA are in error. We stated in *Ruble* that, where multiple employers are involved, the presumption applies to the general employer and the special employer may be liable for benefits only if a contract exists between the special employer and the employee. 598 P.2d at 97.

According to [Professor] Larson, a special employer ... becomes liable for workers' compensation only if the employee ... has made a contract of hire, express or implied, with the special employer.... In the usual case involving multiple employers, the employee is seeking to hold a particular employer liable for workers' compensation. *In such cases,* the liberal purpose of the workers' compensation act, to benefit the employee, and *the presumption that a claim comes within the provisions of the act apply.*

*Id.* at 97 (emphasis added, citations omitted).[4] We quoted Professor Larson:

> What gives the lent-employee cases their special character, however, is the fact that they begin, not with an unknown relation, but with an existing employment relation.... *The ... presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem.*

*Id.* at 97 n. 8 (quoting 1B Arthur Larson, *Workmen's Compensation Law* § 48.10, at 8–210 to 8–211 (1978) (emphasis added)).

The law on when the presumption should be applied in multiple employer cases was further developed in *Alaska Pulp Corp. v. United Paperworkers Int'l Union,* 791 P.2d 1008 (Alaska 1990). In *Alaska Pulp,* the employer claimed that the claimant had suffered a subsequent intervening injury while employed by his union, thus making the union responsible for benefits under the last injurious exposure rule. *Id.* at 1009. The employer claimed that there was an employee-employer relationship between the claimant and the union and argued that it should have the benefit of the presumption with respect to its claim that the union was the employer. *Id.* at 1011. We rejected this attempt to extend the presumption of AS 23.30.120(1) to "inter-employer disputes on the question of whether an employment relationship existed between the worker and the subsequent party." *Id.* at 1011. Our holding did not disturb the principle that the presumption applies where a lent employee

---

**4.** We reiterated the quoted language in a subsequent case, *Kroll v. Reeser,* 655 P.2d 753, 756 (Alaska 1982).

makes a claim against a general employer. We only held that the presumption may not be used by an employer in disputes with other possible employers when the question is which is responsible for payment of a workers' compensation claim. *Id.* at 1011–12.

■ In reaching this conclusion, we emphasized that the presumption of AS 23.30.120(1) is a "pro-worker" presumption and that workers may be deprived of valuable rights if an employee status to which they have not consented contractually is thrust upon them.

> [W]e do not think that the *pro-worker presumption* of AS 23.30.120(1) was intended to facilitate proof of an employee status contrary to that asserted by the worker. *An important purpose underlying the contract of employment requirement is to avoid "thrust[ing] upon a worker an employee status to which he has never consented ... [since doing so] might well deprive him of valuable rights...."* 1C A. Larson, *The Law of Workmen's Compensation* § 47.10 at 287–289 (1986). In a dispute between purported employers, a presumption that the subsequent party was indeed the worker's employer contravenes this purpose. Such use of the presumption risks thrusting upon a worker an employee status to which he never consented, and could deprive him of valuable rights. For example, once deemed to have had an employment relationship, any common law rights the worker may have had

against the subsequent party are terminated. We do not believe that the presumption of AS 23.30.120(1) was intended to adversely affect workers' rights in this manner.

*Id.* at 1011–12 (emphasis added). In the instant case, unlike in *Alaska Pulp,* application of the presumption to Universal is appropriate, since Cluff is attempting to use the presumption to prevent NANA and Universal from thrusting upon her an employee status to which she did not consent contractually.[5]

■ On remand, the Board must apply the presumption of AS 23.30.120(a)(1) to Cluff's claim that Universal was her employer for workers' compensation purposes. Under the presumption, Cluff's injury is presumed to have arisen "out of and in the course of employment" by Universal, absent substantial evidence to the contrary.[6] The presumption "will drop out if an employer adduces 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " that Cluff's injury did not arise out of and in the course of her employment for Universal. *Municipality of Anchorage v. Carter,* 818 P.2d 661, 665 (Alaska 1991) (quoting *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1150 (Alaska 1989)).

### 2. No implied employment contract existed between Cluff and NANA at the time of her injury.

■ In lent employee cases, a special employer may be liable for workers' compensa-

---

5. The application of the presumption of AS 23.30.120(a)(1) against the general employer in lent employee cases also follows from a long line of cases using the presumption in a wide variety of contexts. It is well-established that the presumption goes far beyond the issue of whether an injury is work-related.

> [O]ur rulings had [initially] only applied the presumption to claims which sought to establish a nexus between the injury and the work place. Our recent decisions, however, have given a broader reading to the presumption. In *Municipality of Anchorage v. Carter,* 818 P.2d 661 (Alaska 1991), we extended the presumption of compensability to a claim for continuing care under AS 23.30.095(a) and found that "the text of AS 23.30.120(a) indicates that the presumption of compensability is applicable to any claim for compensation under the workers' compensation statute." *Id.* at 665.

In *Wien Air v. Kramer,* 807 P.2d 471 (Alaska 1991), we applied the presumption to a claim for continuing temporary total disability. *Kirby v. Alaska Treatment Ctr.,* 821 P.2d 127, 129 (Alaska 1991). In *Kirby,* we applied the presumption to claims for vocational rehabilitation benefits. *Id.* In *Sokolowski v. Best Western Golden Lion Hotel,* 813 P.2d 286, 292 (Alaska 1991), we held that the presumption of compensability applied to each evidentiary question inherent in the special hazard exception to the rule that compensation is not payable for injuries suffered while the employee is going to or coming from work.

6. AS 23.30.265(17) defines "injury" in relevant part as "accidental injury or death arising out of and in the course of employment...." An "injury" falling within this definition which results in "disability" is compensable. AS 23.30.265(10), 23.30.010.

tion benefits only if the employee has made an express or implied contract of hire with the special employer. *Selid Construction Co. v. Guarantee Insurance Co.*, 355 P.2d 389 (Alaska 1960); *Kroll v. Reeser*, 655 P.2d 753, 756 (Alaska 1982); *Ruble v. Arctic Gen. Inc.*, 598 P.2d 95, 97 (Alaska 1979); 1B Arthur Larson, *The Law of Workmen's Compensation* § 48, at 8–434 (1992). In *Selid*, an oiler employed by a construction company was ordered by the company to work temporarily for another company. 355 P.2d at 390. The oiler went to work for the other company and was injured toward the end of the day. *Id.* at 391. The construction company urged us to apply the lent employee doctrine and conclude that the oiler was the special employee of the other company for workers' compensation purposes. *Id.* at 392. We held that the oiler was, at the time of the injury, an employee of the construction company and not of the other company for workers' compensation purposes. *Id.* at 393. We stated:

> The relationship of employer-employee can only be created by a contract, which may be express or implied. Once created, the relationship cannot be changed to substitute another employer without the employee's consent. The employee must have understood and agreed before there can be any transfer to another employer. Where the employee commences to serve another at the direction of his employer, no new relationship is necessarily created. He may simply be performing his duty to the employer who gave the order. Even though his actions may be controlled by the new master, no new relationship is created in the absence of an express or implied contract between the employee and the new master. Consent of the employee to a change in masters cannot be implied merely from his obedience to the order of his master.

*Id.*

▆▆▆ All parties agree that there was no express employment contract between NANA and Cluff. In its first decision, the Board concluded that "the employee was per-

forming services for NANA–Marriott under an implied contract of employment (as far as workers' compensation is concerned) when she suffered her injury." "An implied employment contract is formed by a relation resulting from 'the manifestation of consent by one party to another that the other shall act on his behalf and under his control, and consent by the other so to act.'" *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989) (quoting 9 W. Jaeger, *Williston on Contracts* § 1012, at 4–5 (3d ed. 1967)). The existence of an implied contract must be determined by considering all the factors in light of the surrounding circumstances. *Id.*

▆▆▆ The circumstances surrounding the stress test are not sufficient to give rise to an implied employment contract. Even if Cluff consented to act under NANA's control for the period of the test, neither party treated the test as an employment relationship. Although the test may have been for NANA's benefit, it cannot be fairly said that Cluff acted on NANA's behalf or that NANA consented to Cluff acting on its behalf. An implied employment contract will not be found to exist in a situation which clearly preceded any possible future employment relationship.

### 3. The "tryout exception" adopted by this court in *Childs v. Kalgin Island Lodge* is not applicable in the lent employee context.

▆▆▆ In *Childs*, we adopted the "tryout exception to the general rule that a contract for hire must exist before benefits can be awarded." *Childs*, 779 P.2d at 314. We stated that "when an employer exposes potential employees to risks inherent in a tryout period and the applicant is under his direction or control, any injury resulting during such a period is compensable as a matter of law." *Id.* at 315. In reliance on *Childs*, the Board concluded that "the stress test was an integral part of the 'tryout' period." [7] We

7. In support of its conclusion that the tryout exception was applicable, the Board found that 1) Cluff "was participating in a pre-employment stress test at the time of her injury"; 2) the

testing was "an activity integral to NANA's business practices"; 3) NANA utilized Cluff's services for the testing; 4) NANA controlled the time, manner, and location of the activity; and 5) Cluff

conclude, however, that the tryout exception is inapplicable to a special employer in the lent employee context. Therefore, if the Board, after applying the presumption of compensability, concludes that Universal is liable to Cluff for compensation benefits, its decision that the tryout exception applies to Cluff's relationship with NANA will not stand as a matter of law.

Our conclusion that the tryout exception may not apply to special employers in the lent employee context is based on Professor Larson's treatise, the general principles of workers' compensation law, and the policies behind the tryout exception. Larson endorses the tryout exception. 1A Larson, *supra,* § 26.26, at 5–327. However, Larson also states that a special employer may be liable for compensation benefits only if the special employer has an express or implied contract with the lent employee:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if: (a) the employee has made a contract of hire, expressed or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.

1B *id.* § 48.00, at 8–434. Larson puts great emphasis on the importance of a contract for hire with a special employer in lent employee situations:

> In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of hire with the special employer? If this question cannot be answered "yes," the investigation is closed, and there is no need to go on into tests of relative control and the like....
>
> This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation. Most important of

all, he loses the right to sue the special employer at common law for negligence; and when the question has been presented in this form, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.

1B *id.* §§ 48.11 to 48.12, at 8–440.[8] Since there is no contract of hire during a tryout, the tryout exception cannot apply to special employers in a lent employee context.

The conclusion that the tryout exception may not apply to a special employer also follows from the basic principles of compensation law. Two major features of the compensation system are that "the employee and his dependents, in exchange for ... modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act" and that "the right to sue third persons whose negligence caused the injury remains, however, with the proceeds usually being applied first to reimbursement of the employer for the compensation outlay, the balance (or most of it) going to the employee." 1 *id.* § 1.10, at 1–2. The doctrine that workers' compensation law provides an exclusive remedy is, however, limited to situations where the worker gains something of value in exchange for surrendering the common law right to sue in tort:

> If, as stated [by Larson] earlier, the exclusiveness defense is a "part of the *quid pro quo* by which the sacrifices and gains of employees and employers are to some extent put in balance," it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken

---

performed exercises related to the activities she would engage in at the job for which she was being considered.

8. As noted earlier, this court has followed Larson and stressed the important role that the contract

of employment requirement plays in preventing an unwanted employment status from being thrust upon an employee and depriving the employee of a valuable common law right. *See Alaska Pulp,* 791 P.2d at 1011–12.

away except when something of value has been put in their place.

2A *id.* § 65.40, at 12–41.

Applying the tryout exception to a special employer in the lent employee context would be improper because it would take away the lent employee's right of action for damages without giving the employee anything of value in its place. If a general employer lends an employee to a special employer for purposes of a tryout and the lent employee is injured, the lent employee is assured of getting compensation benefits from the general employer. Thus, applying the tryout exception to the special employer would take away the lent employee's right to sue the special employer in tort without giving the employee any additional benefits in exchange.

Moreover, the policies underlying the tryout exception do not support extension of the tryout exception to cover lent employees. The tryout exception is aimed at making sure that compensation benefits are provided once the risks of employment begin to operate where there is no contract of hire. *See Laeng v. Workmen's Compensation Appeals Bd.*, 6 Cal.3d 771, 100 Cal.Rptr. 377, 494 P.2d 1 (1972). As a lent employee is already guaranteed compensation benefits from the general employer if injured while trying out with a special employer, it is unnecessary to extend the tryout exception to lent employees.

Since the tryout exception is not applicable to special employers in the lent employee context and since no employment contract was made between Cluff and NANA, if the Board on remand finds that Universal is liable to Cluff for compensation benefits, NANA will not be liable for compensation benefits and Cluff will have the right to sue NANA in tort.

**B. Should the tryout exception apply to the stress test if the Board finds that Universal is not liable to Cluff?**

If the Board finds that Universal was not Cluff's employer for workers' compensation purposes, determining whether the tryout exception applies to Cluff's relationship with NANA will require additional factual determinations by the Board on remand. Cluff argues that the tryout exception is inapplicable to the facts of her case. Cluff claims that her case is distinguishable from *Childs* for four reasons: 1) she did not apply for or intend to apply for a job with NANA; 2) she did not file a workers' compensation claim against NANA; 3) the stress test alone was not sufficient to establish a tryout under law; and 4) she took the stress test at the direction of her employer Universal. We shall address Cluff's arguments in inverse order.

■ Cluff is correct that the tryout exception should not be applicable if she took the stress test at the direction of Universal. If the Board finds that Universal instructed Cluff to take the test, that will mean that Universal was Cluff's general employer at the time of the test and Universal lent Cluff to NANA for the test.[9] As we explained above, the tryout exception is not applicable to a special employer in a lent employee situation.

■ Cluff is in error, however, in her argument that the stress test is not sufficient to establish a tryout under law. It is true that, unlike Cluff, the applicant in *Childs* performed actual work for the employer. *Childs*, 779 P.2d at 314. But when we adopted the tryout exception in *Childs*, we relied on *Laeng*, 6 Cal.3d 771, 100 Cal.Rptr. 377, 494 P.2d 1. *See Childs*, 779 P.2d at 315. The applicant in *Laeng* did not perform any services for his potential employer and only participated in a physical agility test designed to mimic the activities he would have engaged in if hired. 6 Cal.3d 771, 100 Cal. Rptr. 377, 494 P.2d at 3. The stress test taken by Cluff is similar to the agility test taken in *Laeng* since Cluff took a test designed to mimic the activities she would have engaged in if employed by NANA. We find,

---

9. The converse will not necessarily be true—if Universal did not instruct Cluff to take the test, Universal still may be liable for Cluff's workers' compensation benefits, depending on the Board's evaluation of such indicia of work connectedness as Universal's sanction of the test, its payment of Cluff during the time she was taking the test, the remoteness of the work site, and other potential factors. *Cf.* 1–1A Larson, *supra*, §§ 6–29.

therefore, that the tryout exception is applicable to the facts of the stress test.

■ We interpret Cluff's contention that *Childs* should not be applicable because Cluff did not seek workers' compensation benefits against the purported employer (NANA) as an argument that the tryout exception should not be applicable defensively. None of the jurisdictions applying the tryout exception has decided whether the exception may be applied defensively. Allowing the tryout exception to increase employers' compensation liability without permitting employers to use it defensively would contravene the basic balancing principle of the compensation system that the employee gives up the common law right to sue in tort for modest but assured benefits. *See* 1 Larson, *supra,* § 1.20, at 1–2. Forbidding defensive use of the tryout exception would turn the tryout exception into a tool that could only benefit employees without providing a corresponding benefit to employers. We therefore decline to hold that the tryout exception may not be used defensively.

However, Cluff's argument that the tryout exception should not be applicable because she did not apply for or intend to apply for a job with NANA leads us to a limitation on defensive use of the tryout exception. When an employee accepts a job with an employer, it is fair that the employee loses the right to sue in tort in exchange for workers' compensation coverage because the employee knows that employment is being accepted and presumably knows the impact that such acceptance has on the right to sue. Likewise, it can be fair for an employee to give up the right to sue in tort when participating in a tryout only if the employee knows that she is applying for a job and participating in a tryout. Otherwise, defensive use of the tryout exception would thrust upon the employee an employment status to which she did not consent and deprive the employee of valuable rights. *See Alaska Pulp,* 791 P.2d at 1011. Consequently, we decide that the tryout exception may be applied defensively only where the employee knows that she is participating in a tryout and applying for a job.

The Board did not determine whether Cluff intended to apply for a job with NANA or knew that she was participating in a test that was part of a job application process. The Board must resolve this on remand only if it finds that Universal was not Cluff's general employer. If the Board then finds that Cluff intended to apply for a job with NANA and knew that she was participating in a test that was part of a job application process when she took the stress examination, it will follow that NANA was Cluff's employer for compensation purposes. Otherwise, NANA may not be considered Cluff's employer for compensation purposes.

C. **Did the superior court err in dismissing Cluff's civil action against NANA?**

Although we remand Cluff's workers' compensation case to the Board for additional proceedings, we affirm the dismissal of NANA as a defendant in Cluff's civil suit. We have previously stated that dismissal with prejudice of an action based on collateral estoppel when the initial suit is still subject to appeal, rather than staying the action pending the outcome of the appeal, is not error. *Lyman v. State,* 824 P.2d 703, 705–06 (Alaska 1992). Since the superior court committed no error when it entered its judgment, and since we are not issuing a final decision on whether NANA is liable to Cluff for compensation benefits, this court is not the proper forum for attacking the superior court's judgment. If Cluff prevails on remand before the Board (or on a subsequent appeal) on her contention that NANA was not her employer, Cluff may file a Civil Rule 60(b)(5) motion for relief from judgment in the civil action, which should be granted as a matter of course assuming that it is filed within a reasonable time after final resolution of the controversy being remanded to the Board.

III. **CONCLUSION**

The Board erred by attempting to determine whether NANA was liable to Cluff for compensation benefits without first attempting to determine whether Universal was liable to Cluff for compensation benefits. The

Board erred by failing to apply the presumption of compensability to Cluff's claim that Universal was her employer with regard to the injury. The Board erred in concluding that an implied contract of employment existed between Cluff and NANA. The Board did not make the factual findings necessary to determine whether the tryout exception is applicable to this case.

We therefore REMAND this case to the Superior Court with directions to remand it to the Board for further proceedings consistent with this opinion. The Board must first determine whether Universal was Cluff's general employer with regard to the stress test. In making this determination, the Board must apply the presumption of compensability to Universal. If Universal was Cluff's general employer, then, under lent employment rules, NANA will not be liable to Cluff for compensation benefits. If Universal was not Cluff's general employer, the Board may find that the tryout exception applies and that NANA is liable to Cluff for compensation benefits only if it determines that Cluff intended to apply for a job with NANA and knew that she was participating in a test that was part of a job application process.

The superior court's decision in case S–6223, granting NANA summary judgment on Cluff's civil claim against it, is AFFIRMED.